JOHN W. MILLER *et al.* Defendants in Error, *vs.* HAT-TIE MILLER *et al.* Plaintiffs in Error.

*Opinion filed April 23, 1908.*

1. SEPARATE MAINTENANCE—*a decree may require payment of money and conveyance of land.* A separate maintenance decree may provide for the payment by the husband of a certain sum per month to the wife, and may also provide that he shall convey to the minor child, whom the wife is to support and educate, certain real estate subject to a life estate in the wife, and if such decree is entered by consent of the parties it is binding, and may be carried into effect after the husband's death, as against his heirs.

2. HOMESTEAD—*there cannot be two homesteads at the same time.* A wife and minor child who elect to continue their residence upon town property after the husband, who has also been living there, has left them and gone to his farm to reside with his tenants, cannot claim an estate of homestead in the farm upon the husband's death.

WRIT OF ERROR to the Circuit Court of Fayette county; the Hon. A. M. ROSE, Judge, presiding.

BROWN & BURNSIDE, for plaintiffs in error.

F. M. GUINN, for defendants in error.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Jacob Miller died intestate in Fayette county, Illinois, on January 30, 1907. At the time of his death he was the owner of certain farm lands in that county and held the legal title to lots 7 and 8, in block 4, in Morrison & Stokes' addition to the village of Ramsey, in the same county. He had been twice married. By his first wife he had several children. His second wife, Jane Miller, survived him. One child, Hattie Miller, was born of that marriage, and she also survived. On February 4, 1907, certain of his children by the first marriage filed a bill for partition, making his other heirs and his widow defendants. By that bill it was averred that Jane Miller was entitled to an estate of homestead in the lots in the village of Ramsey and to a dower interest in all the real estate of which Jacob Miller died seized, and that, subject to such homestead and dower rights, the descendants of the deceased were seized in fee of the real estate left by him. The bill prayed the assignment of homestead and dower and partition of the premises. Jane Miller filed an answer, which she characterized as an answer in the nature of a cross-bill. Hattie Miller being a minor, a guardian *ad litem* was appointed for her, who on her behalf filed a formal answer and also filed a cross-bill. To the cross-bill of Hattie Miller the complainants filed a demurrer. No replications seem to have been filed. After hearing argument upon the demurrer the chancellor took the questions arising thereon under advisement, to be determined after the evidence had been heard, and after hearing the evidence in open court he sustained the demurrer to the cross-bill and decreed partition and the assignment of homestead and dower, in accordance with the prayer of the original bill. Jane Miller, the widow, and Hattie Miller, the daughter, sue out this writ of error.

234 — 2

By their pleadings in the circuit court plaintiffs in error averred, and the proof showed, that at the August term, 1905, of the circuit court of Fayette county a suit for separate maintenance brought by Jane Miller against Jacob Miller was pending and that a decree was entered in that suit in favor of the complainant therein by agreement of the parties, by which Jacob Miller was required to pay the sum of $10 per month to Jane Miller for her maintenance. The wife was to have the care and custody of the daughter, Hattie, and to be charged with her support and education. Some time prior to the beginning of this suit Mr. and Mrs. Miller, with their daughter, had moved from their residence on the farm and taken up their abode on the lots in the village of Ramsey, and we conclude from the proof that those lots then became their homestead. The decree in the separate maintenance suit, which, as we have above indicated, was entered by agreement, directed that Jacob Miller and his wife should join in a deed conveying the two lots to Hattie Miller, subject to a life estate which by the deed should be reserved to Jane Miller, and provided that in event of the death of Hattie Miller without heirs of her body, such property, after the death of Jane Miller, should revert to Jacob Miller. Prior to the beginning of the suit for separate maintenance a disagreement had taken place between Jacob Miller and his wife. He had then left her residing with the child on the property in the village of Ramsey and had again taken up his residence on the farm, where he continued to reside with tenants who rented the land, until his death. No deed was ever made in accordance with the decree entered in the separate maintenance suit, but Jane Miller and Hattie Miller continued to reside on the lots down to the time of the institution of this suit. Jane and Hattie Miller in this proceeding sought to have the decree in the suit for separate maintenance carried into effect so far as it related to the conveyance of the title to the lots, and contended that at the time of the death of Jacob Miller

he had a homestead on the farm, and they sought to have homestead set off to them in the farm land. In this court they urge that the chancellor erred (1) in not entering a decree carrying into effect the decree in the separate maintenance proceeding in so far as that decree pertained to the title to the lots in the village of Ramsey; and (2) in refusing to set off homestead to the widow and minor child in the farm land.

It is contended on the part of the defendants in error that the suit for separate maintenance was a suit solely for the recovery of money; that the relief granted by a decree in such a suit must be confined to that sought by the bill, and that the provision in the decree directing the conveyance of the property to Hattie Miller is entirely without the scope of the litigation and was in reference to a matter that the court was not called upon to consider, and that this provision last mentioned is therefore entirely null and void. We think this position not tenable. The husband and wife had the right to fix, by agreement, the amount of money that should be paid to or the amount of property that should be received by the wife to provide for her separate maintenance. The $10 a month decreed to be paid in cash was much less than would be needed to maintain the wife and daughter, and it was no doubt in view of this fact that the arrangement in reference to the conveyance of the lots in the village of Ramsey was made, and as the wife was charged by the decree with the maintenance and education of the child there was no lawful objection to her making provision for conveyance of the title to the daughter, which should become effective, so far as the right to the possession of the property was concerned, after the death of the mother.

In the case of *Buck* v. *Buck*, 60 Ill. 241, a decree was entered by consent in the circuit court giving to the wife certain property *en masse* in satisfaction of alimony, and providing that the husband should maintain and educate Eva

Buck, the adopted child of the parties. Afterward the husband sued out a writ of error, and insisted that the amount allowed in lieu of alimony was excessive and that it was error to decree that the husband should maintain and educate the adopted child. This court held that the husband having consented to the provisions of the decree, including that requiring him to support and maintain the adopted daughter, he was bound thereby and could have no relief even in a direct proceeding to review the decree; that it was competent for him to consent to such a decree, and having done so it must remain forever binding upon him. The decree in the separate maintenance suit between the deceased and his wife, now under consideration, cannot, on principle, be distinguished from that which this court affirmed in the *Buck case.* We think the decree in the separate maintenance proceeding should have been carried into effect in so far as it related to the conveyance of the title to the lots.

At the time that Miller left his wife the homestead of the family was on the lots in Ramsey. So long as the wife and daughter elected to continue their residence on those lots their homestead right there would continue. (*Mix* v. *King,* 55 Ill. 434.) They could not have two homesteads at the same time. There is no evidence that they ever elected or desired to abandon this homestead and make the residence of the husband on the farm their home. Under these circumstances it cannot be said that they had an estate of homestead in the farm lands.

The decree of the circuit court will be reversed and the cause remanded, with directions to that court to carry into effect the decree in the suit for separate maintenance in so far as it provides for the conveyance of the title to the lots in the village of Ramsey, and to assign dower in and award partition of the farm lands in accordance with the prayer of the original bill.

*Reversed and remanded, with directions.*